Filed Feb. 12, 1884.

———————◆———————

No. 11,313.

## VESS v. THE STATE.

| 93 | 211 |
| 133 | 490 |
| 93 | 211 |
| 161 | 380 |

CRIMINAL LAW.—*Forcible Detainer.*—A prosecution under section 1972, R. S. 1881, will not lie against one who forcibly holds possession of lands which have been delivered to him and taken in good faith by virtue of a writ, regular on its face, issued upon the judgment of a court of competent jurisdiction, though the writ may have been unlawfully issued.

SAME.—A prosecution for forcible detainer does not involve any question of title.

From the Tippecanoe Circuit Court.

*C. E. Lake* and *J. S. McMillin,* for appellant.

*J. T. Davidson,* for the State.

NIBLACK, J.—On the 26th day of January, 1882, Mrs.

Sarah Swaynie and Filander F. Vess entered into a written contract, by the terms of which the former, in consideration of certain stipulated payments to be made to her, purported to lease to the latter an eighty-acre tract of land in Tippecanoe county, for a period of five years, commencing on the ensuing first day of November. Afterwards, it appearing that there had been a mistake in the description of the land intended to be included in the contract, and some disagreements between the parties intervening, Vess commenced an action in the superior court of Tippecanoe county to reform the description, and to recover the possession of the land under the lease. Such proceedings were thereupon had that on the 15th day of January, 1883, Vess obtained a decree correcting the description as prayed, and recovered a judgment against Mrs. Swaynie for the possession of the land, to which judgment was added, in these words: "And said defendant prays an appeal to the Supreme Court, which is granted."

Under the caption of the same cause, the record of said superior court discloses the following proceedings, on the 14th day of February, 1883, which was during the same term at which judgment was rendered as above: " Comes now the defendant by W. H. Bryan, her attorney, and on motion presents to the court and files the following appeal bond, payable and conditioned according to law, in the penal sum of $200, with William P. McMillin as surety therein, who is accepted and approved by the court, to wit," then follows a bond purporting to be an appeal bond, signed by Mrs. Swaynie and McMillin, and answering the general description given in the order. Neither Vess nor his attorney had notice of the filing of the bond set out as above in the order, until several days after it was filed and the order entered.

Not long after the filing of the bond, a transcript of these proceedings was filed in this court in the form of an appeal from the judgment against Mrs. Swaynie. The land in controversy constituted a farm, upon which Mrs. Swaynie resided, and had upon it a dwelling-house, stable, garden, stable lot, gates.

Vess v. The State.

and other improvements. Some time afterwards, perhaps early in June following, Vess's attorneys advised him that the bond filed by Mrs. Swaynie, as above stated, was neither authorized nor properly approved by the superior court, and was consequently invalid as an appeal bond; that for that reason he was entitled to have a writ of possession at any time against Mrs. Swaynie, and that they would soon cause such a writ to be issued. Accordingly, on the 2d day of July, 1883, Vess's attorneys had a writ of possession issued and delivered to the sheriff of Tippecanoe county, who placed the same in the hands of one Somerville, as his deputy, for service. Somerville visited the premises next morning, and demanded possession of Mrs. Swaynie, who, refusing to surrender possession, fastened the door of the dwelling-house and went away. Somerville then called upon Vess and Vess's brother, both of whom lived near by, to assist him, and, taking an ax, pried the door of the house open without injury to it, and put Vess in possession, making return of the writ accordingly. Next morning, being the morning of the 4th day of July, 1883, Vess, still continuing in possession of the premises, was called away for a time, and left everything in charge of one Alexander Cart, instructing him to hold possession of the property until he, Vess, should return. After Vess had left, one Byers, who had been a tenant of Mrs. Swaynie, and had occupied a part of her house and used her stable, came up to the gate of the stable lot with two horses, and, opening the gate, started to take his horses into the lot. Cart, accompanied by a man by the name of Kid, who was merely visiting in the neighborhood, came out to meet Byers, and forbade his coming into the lot. Byers, persisting, had succeeded in getting himself and one horse into the lot, when Cart rushed up and shut the gate in the face of the other horse, and, stepping back, gathered up a rock, and made angry and excited threats and demonstrations against Byers in case he further persisted in bringing his horses inside the lot.

At this juncture Byers withdrew, taking both of his horses

with him, when Cart threw down the rock. Mrs. Swaynie and one Fouts, her brother, who had followed on behind Byers, came up in time either to see and hear what occurred between Cart and Byers, or to immediately ascertain what had so occurred between them, but Mrs. Swaynie did not make any formal demand for or effort to regain possession, and only participated in some general conversation, which followed after she came up, in which Cart informed all persons present that Vess had instructed him to retain possession of the premises, and that none of those on the outside could come in except for some temporary purpose. Mrs. Swaynie and Fouts and Byers then left, and the next day Mrs. Swaynie filed an affidavit before a justice of the peace, charging both Vess and Cart with a forcible entry upon, and detainer of, the lands in controversy, under section 1972, R. S. 1881, and causing their arrest upon that charge. Vess being tried separately was convicted before the justice, whereupon he appealed to the circuit court, where, upon a finding of guilty, upon the facts herein above recited, a fine of one dollar was assessed against him, and, over a motion for a new trial, judgment was rendered accordingly.

The only question presented here for decision is, was the appellant, under the circumstances as we have given them, properly convicted of the offence with which he was charged?

On behalf of the appellant it is contended: *First.* That the filing of the bond in the civil action by Mrs. Swaynie was neither preceded nor accompanied by such orders as were necessary to give it validity as an appeal bond for the stay of proceedings on the judgment, and that, in consequence, the writ of possession, under which the appellant was put in possession of the premises in dispute, was rightfully issued and properly served by the deputy sheriff. *Secondly.* That being thus lawfully put in possession of the premises, the appellant did nothing more than he had a right to do in defence of his possession.

On behalf of the State, it is insisted that there was no sub-

stantial defect in the proceedings either preceding or 'connected with the filing of the bond by Mrs. Swaynie as an appeal bond; that as a necessary consequence the writ of possession was wrongfully issued; that as the appellant was chargeable with notice of the wrong inflicted upon Mrs. Swaynie by the issuance of that writ; the possession which he ostensibly obtained under it was in bad faith and colorable only, and hence forcible and unlawful. *Tibbetts* v. *O'Connell*, 66 Ind. 171.

In a prosecution of this kind, the defendant can neither go into evidence to disprove the title of the complainant, nor to establish his own, as the question is not one of civil right, but of public concern, affecting the public peace. The offence, considered as an injury merely, is against the possession of the prosecuting witness, and not against his title. Hence a criminal prosecution for a forcible entry and detainer can not be maintained for the purpose of trying the title to the property upon which the alleged force was used. 2 Archbold Crim. Pr., 335; 2 Whart. Crim. L., section 2044; 1 Russell Crimes, 431; Moore Crim. L., section 749; *Archey* v. *Knight*, 61 Ind. 311.

It follows that such a prosecution can not be either maintained or used as a means of collateral attack upon proceedings in a civil action concerning the same property.

The writ of possession in evidence in this case was issued on a judgment which the superior court had jurisdiction to render, and was regular upon its face. It, therefore, conferred authority upon Somerville to put the appellant in possession of the property, and as there was no evidence tending to show bad faith on the part of the appellant, the writ afforded him the same protection which it conferred on Somerville. Wait Actions and Defenses, vol. 5, 29; vol. 6, 112; vol. 7, 191; *Goodwine* v. *Stephens*, 63 Ind. 112.

The appellant having thus been lawfully put in possession of the property, he, in our opinion, did no more than he had the legal right to do in defence of the possession with which

the law had so invested him. 1 Bishop Crim. L., section 536. If the writ of possession was, in fact, either wrongfully or improvidently issued, Mrs. Swaynie had doubtless, if she has not still, some adequate civil remedy.

The views we have expressed upon the general features of this case render it unnecessary, and, as we think, improper, that we shall consider the question of the alleged insufficiency of the bond filed by Mrs. Swaynie as an appeal. bond in the civil suit. Nor need we, for the same reason, inquire whether, in any event, the demonstration of force made by Cart was sufficient as against Mrs. Swaynie to make either him or the appellant guilty of a forcible detainer of the disputed property.

The judgment is reversed, and the cause remanded for a new trial.

Filed Feb. 12, 1884.